IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIM MARIE TRAVERSA,

Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

Respondent.

No. 17 C 2115

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Kim Traversa ("Claimant") seeks review of the final decision of Commissioner of Social Security ("Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.] The parties have filed cross-motions for summary judgment [ECF Nos. 12 and 13] pursuant to Federal Rule of Civil Procedure 56.[2] This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 12] is granted, and the Commissioner's Motion [ECF No. 13] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The government did not file a separate motion for summary judgment, but filed a brief styled as "Defendant's Response to Plaintiff's Motion for Summary Judgment." [ECF No. 13.] The Court construes the response as a cross-motion for summary judgment.

# I. PROCEDURAL HISTORY

Claimant filed her claim for SSI on March 7, 2013, alleging disability beginning March 1, 2011. (R. 21.) The application was denied initially and upon reconsideration, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*) On September 9, 2015, Claimant, represented by counsel, appeared and testified at a hearing before ALJ Jessica Inouye. (R. 41–109.) The ALJ also heard testimony from Claimant's father, Robert Ruffing, and vocational expert ("VE") James Radke. (*Id.*)

On December 23, 2015, the ALJ denied Claimant's claim for SSI, based on a finding that she was not disabled under the Act. (R. 21–36.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSR").[3] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since March 7, 2013, the application date. (R. 23.) At step two, the ALJ found that Claimant had the severe impairments of obesity, osteoarthritis of the knees, right hip, and first carpometacarpal joint/left DeQuervain's tenosynovitis, degenerative disc disease, anxiety, and attention deficit hyperactivity disorder ("ADHD"). (R. 23–24.) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P., Appendix 1. (R. 24.) The ALJ then assessed Claimant's residual functional capacity ("RFC")[4] and concluded:

---

[3] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can

2

> [Claimant] has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) but standing and walking are limited to 2 hours in the 8-hour workday; sitting 6 hours in the 8-hour workday; this individual should not be required to use the foot controls in the performance of job tasks; no climbing of ladders, ropes or scaffolds; the remaining postural activities are limited on an occasional basis (climbing ramps/stairs, balancing, stopping, crouching, crawling, kneeling); avoid concentrated exposure to hazards; frequent use of the left hand for gross manipulation; can learn, understand, remember and carry out simple, routine, repetitive work tasks and sustain them throughout the typical workday; can engage in only superficial interactions with the general public as part of the work tasks, and should not be required to engage in any tandem tasks or team work.

(R. 28.) At step four, the ALJ determined that Claimant had no past relevant work. (R. 35.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform, such as mail clerk, cashier, or receptionist. (R. 35–36.) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (R. 36.) The Appeals Council declined to review the matter on January 26, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

---

still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant alleges that: (1) the ALJ's finding on medical equivalency is not supported by substantial evidence; (2) the ALJ failed to comply with SSR 00-4p and relied on questionable testimony from the VE; and (3) the ALJ unreasonably relied on GAF scores to reject the opinions of Claimant's treating psychiatrist. [ECF No. 12, at 9–16.]

A.      **Medical Equivalency**

The Court first addresses Claimant's argument that the ALJ erred in relying on the opinions of the state agency consultants regarding medical equivalency because the opinions were based on an incomplete record. [ECF No. 12, at 9–11.] The Court agrees with Claimant.

After the administrative hearing, Claimant's representative requested that the ALJ issue an interrogatory to a medical expert to look into the possibility of whether the combination of

Claimant's impairments equals a listing, based upon new objective medical evidence, namely x-rays of the right knee, right hip, and lumbosacral spine. (R. 293.) The x-ray of the right knee demonstrated a small joint effusion, moderate to marked degenerative changes involving the medial tibiofemoral joint, and mild to moderate degenerative changes involving the lateral tibiofemoral and patellofemoral joint spaces. (R. 684.) Views of the right hip revealed mild degenerative changes involving the bilateral hip and sacral iliac joints and secondary prominence involving the lateral femoral head neck junctions bilaterally with cam-type femoral acetabular impingement not excluded. (*Id.*) Examination of the lumbar spine demonstrated mild dextroscoliosis, marked degenerative changes involving the L5-S1 disc space, mild to moderate degenerative changes involving the remainder of the disc spaces, marked degenerative changings involving the low lumbar facet joints. (*Id.*) Degenerative changes of the visualized thoracic spine were also visualized. (*Id.*)

The ALJ denied Claimant's request for an updated opinion on medical equivalence. (R. 34.) The ALJ noted that the state agency physicians had already performed such an assessment at the initial and reconsideration levels, and that "the additional evidence at the hearing level fail[ed] to demonstrate a significant change in the claimant's condition at the time of the hearing." (*Id.*) Notably, the state agency physicians gave conflicting opinions regarding Claimant's physical capabilities. At the initial level, Dr. Julian Pardo limited Claimant to two hours of standing and/or walking in an eight-hour workday, and opined that Claimant demonstrated the maximum sustained work capability for sedentary work. (R. 115–17.) At reconsideration, Dr. Charles Wabner limited Claimant to six hours of standing and/or walking in an eight-hour workday and opined that Claimant demonstrated the maximum sustained work capability for light work. (R. 126–28.) The ALJ assigned "great weight" to Dr. Wabner's

5

opinion, "who found [Claimant] could perform light work activity even without the benefit of the additional evidence received at the hearing level." (R. 34.) Ultimately, the ALJ concluded that "the evidence demonstrates [Claimant] is capable of performing work that is light and/or sedentary." (*Id.*)

Claimant argues that the ALJ could not rely on the state agency medical consultants because their reports are dated several months before the December 2014 x-rays of the right knee, right hip, and lumbosacral spine. Claimant asserts that, due to the timing and results of these x-ray reports, the ALJ was required to consult an expert for an updated opinion regarding medical equivalence.

An ALJ must obtain an updated medical opinion from a medical expert "when additional medical evidence is received that *in the opinion of the administrative law judge* . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity" to any listed impairment. SSR 96-6p, at *4 (emphasis added). The SSA thus gives the ALJ considerable discretion in deciding when to summon a medical advisor for a new opinion on equivalence. *Accord Young v. Colvin*, 2015 WL 331287, at *4 (S.D. Ind. Jan. 22, 2015) ("[T]he decision to seek an updated medical opinion lies squarely within the ALJ's discretion.").

Given the new objective evidence demonstrating marked degenerative changes, however, the fact that Claimant's representative specifically requested an updated opinion, and the conflict between the stage agency physicians' opinions, the Court cannot conclude that the ALJ's decision not to seek an updated opinion was reasonable under the circumstances presented. Accordingly, remand is required to allow the ALJ to obtain an updated medical opinion of whether Claimant's conditions meet or equal a listing. *See J. v. Colvin*, 2016 WL 4486932, at *4

(S.D. Ind. Aug. 26, 2016).

**B.  The VE's Testimony**

Claimant next argues that the ALJ failed to resolve apparent conflicts between the RFC determination and the jobs provided by the VE. [ECF No. 12, at 11–14.] Specifically, Claimant contends that the mail clerk position requires a significant degree of standing and/or walking in an eight-hour workday, and the cashier and receptionist positions directly conflict with the ALJ's limitation of only occasional superficial interactions with the general public. (*Id.*)

As an initial matter, the Court finds Claimant's argument regarding the mail clerk position unpersuasive. The VE specifically testified that he reduced the number of jobs available in the national economy by three quarters due to the standing and walking limitations. (R. 98.) However, Claimant's arguments regarding the remaining positions—cashier and receptionist—carry much more weight.

A VE's testimony satisfies the step five burden of proof only if it is reliable. *Overman v. Astrue*, 546 F.3d 356, 464 (7th Cir. 2008). "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). SSR 00-4p, which clarifies standards for VEs providing evidence before ALJs in disability decisions, notes that "an ALJ has an affirmative responsibility to ask whether a VE's evidence conflicts with the information provided in the DOT before relying on that evidence to support a determination of nondisability." SSR 00-4p, at *4; *Overman*, 546 F.3d at 462–63 (internal quotations omitted). Furthermore, SSR 00-4p requires ALJs to investigate and resolve discrepancies when the VE's testimony appears to conflict with the DOT. SSR 00-4p; *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) ("If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a

7

reasonable explanation for the apparent conflict."). An "apparent conflict" exists where it is so "obvious that the ALJ should have picked up on [it] without any assistance. *Weatherbee v. Astrue*, 649 F.3d 565, 571–72 (7th Cir. 2011); *Overman*, 546 F.3d at 463.

Here, the ALJ satisfied SSR 00-4p's first requirement of asking whether the VE's evidence conflicted with the VE. Claimant contends, however, that the ALJ did not satisfy the second prong of SSR 00-4p because she failed to investigate and resolve inconsistencies between the VE's statements and the DOT, leading to a decision that lacks substantial evidence. The Court agrees that the conflict between the VE's testimony and the DOT rendered the ALJ's findings unreliable, resulting in a failure to build an accurate and logical bridge from the evidence to the ALJ's conclusion. *See Newcomb v. Berryhill*, 2017 WL 3189475, at *4 (N.D. Ill. July 27, 2017).

First, the VE testified based on the ALJ's RFC assessment that Claimant could perform the job "receptionist" and identified DOT code 237.367-046. (R. 99.) However, according to the DOT, the corresponding code provided by the VE, the receptionist job identified as suitable for Claimant's limitations actually is a telephone quotation clerk (financial) position.[5] Several factors produced unresolved confusion in the VE's testimony. First, the DOT provides a separate definition for "receptionist" which is substantively different than the VE's code.[6] Second, the

---

[5] DOT Code 237.367-046: Telephone Quotation Clerk (Financial)—Answers telephone calls from customers requesting current stock quotations and provides information posted on electronic quote board. Relays calls to REGISTERED REPRESENTATIVE (financial) 250.257-018 as requested by customer. May call customers to inform them of stock quotations.

<https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02B.HTM, last visited June 27, 2018.>

[6] DOT Code 237.367-038: Receptionist (clerical)—Receives callers at establishment, determines nature of business, and directs callers to destination: Obtains caller's name and arranges for appointment with person called upon. Directs caller to destination and records name, time of call, nature of business, and person called upon. May operate PBX telephone console to receive incoming messages. May type memos, correspondence, reports, and other documents. May work in office of medical practitioner or in other health care facility and be designated Outpatient Receptionist (medical ser.) or Receptionist,

VE offered little to no substantive description of the jobs he provided which would allow the ALJ to reasonably determine if the job code or job title provided was suitable for Claimant. Absent descriptive VE testimony, it is difficult to decipher if the RFC hypothetical posed by the ALJ was applied to the job titles or codes provided by the VE. *Newcomb*, 2017 WL 3189475, at *4.

According to Claimant, "common sense and experience and the DOT belie the conclusion that a cashier and receptionist only have occasional superficial interactions with the general public." [ECF No. 12, at 14.] The Court agrees. Given the very nature of the two positions, there can be no doubt that both a receptionist and a cashier require more than "occasional superficial interaction with the general public as part of the work tasks." For example, the foremost part of the job description for the telephone quotation clerk (i.e., receptionist) says, "answers telephone calls from customers." This is a clear indication that interaction with the general public will not be "occasional." Similarly, the description of the cashier position begins with "receives cash from customers or employees."[7]

---

Doctor's Office (medical ser.). May issue visitor's pass when required. May make future appointments and answer inquiries.
https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/ DOT02B.HTM, last accessed June 27, 2018.

[7] DOT Code 211.462-010: Cashier II (clerical)—Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be designated according to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier (hotel & rest.); Store Cashier (clerical); or according to type of account as Cashier, Credit (clerical); Cashier, Payments Received (clerical). May press numeric keys of computer corresponding to gasoline pump to reset meter on pump and to record amount of sale and be designated Cashier, Self-

9

In the Court's view, the ALJ's finding that Claimant could perform the jobs of receptionist and cashier despite her limitation to only occasional superficial interactions with the general public defies common sense. When reviewing an ALJ's decision, the Court is not required to leave common sense behind. *Ward v. Apfel*, 2000 WL 89843 (N.D. Ill. Jan. 20, 2000). Nor is an ALJ required to "suspend common sense and accept a VE's unsubstantiated speculation." *Okubo v. Berryhill*, 2018 WL 2130435, at *16 (N.D. Ill. May 9, 2018). Here, the ALJ's failure to address or resolve these conflicts and her dependence on this unreliable VE testimony means that the step five conclusion was unsupported by substantial evidence. *Overman*, 546 F.3d at 463. On remand, the ALJ should take care in assessing the reliability of any VE testimony.

## C. Other Issues

Because the Court remands on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. The Commissioner, however, should not assume these issues were omitted from the opinion because no error was found.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *see Smith v. Apfel*, 231 F.3d

---

Service Gasoline (automotive ser.). May receive money, make change, and cash checks for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-Booth Cashier (amuse. & rec.).
https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02A.HTM, last accessed June 27, 2018

433, 437 (7th Cir. 2000); *Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir. 1994).

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 12] is granted, and the Commissioner's Motion [ECF No. 13] is denied. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 9, 2018